Ronald J. KREUTZER, Fred Hinze, Alan Allen, John O'Shea, Thomas Veigh, Frank Cartwright and Gary D. Jeske, Plaintiffs–Appellants,

v.

A.O. SMITH CORPORATION, a foreign corporation, Defendant–Appellee.

No. 90–3547.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1991.

Decided Dec. 18, 1991.

Rehearing and Rehearing En Banc Denied Feb. 19, 1992.

Bruce J. Landgraf (argued), Kenan J. Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiffs-appellants.

Herbert P. Wiedemann (argued), Karl A. Dahlen, Foley & Lardner, Milwaukee, Wis., for defendant-appellee.

BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Seven employees sued their former employer, A.O. Smith Corporation ("A.O. Smith"), alleging that it violated the Employee Retirement Income Security Act, 29 U.S.C. § 1001–1461 (1988) ("ERISA"), in its computation of severance pay. The parties filed cross-motions for summary judgment. Because we hold that the employees' purported reliance upon an out-dated company handbook was unreasonable, we affirm.

I.

The following facts essentially are undisputed. Ronald Kreutzer, Fred Hinze, Alan Allen, John O'Shea, Thomas Veigh, Frank Cartwright, and Gary Jeske ("the employees") worked as supervisors for A.O. Smith

Automotive Products, a division of A.O. Smith Corporation. They were terminated on December 4, 1987, as the result of a reduction in force of supervisory personnel. The employees received severance pay calculated pursuant to Corporation Policy No. PR–22, Revision 3 (1970). This suit stems from the calculation of the severance pay the employees received upon their termination.

The company's severance formula, in effect since May 1970, is set forth in the Corporation Policy Manual PR–22. A.O. Smith refers to this formula as "Revision 3." The policy provides the following benefits:

| Completed Years of Service | Termination Pay |
| --- | --- |
| Less than 3 years | ½ of 1 month's salary |
| More than 3 but less than 5 years | 1 month's salary |
| More than 5 but less than 10 years | 1½ months' salary |
| More than 10 but less than 15 years | 2 months' salary |
| More than 15 but less than 20 years | 2½ months' salary |
| More than 20 years | 3 months' salary |

Appellants' Appendix at 117. Under this version of the policy, "no deduction for potential unemployment benefits shall be made from the termination pay." The employees claim that their severance pay should be calculated in accordance with a formula in effect from 1965 until 1970, referred to as "Revision 1."[1] Revision 1 appeared in the supervisor's handbook they received when they were promoted to supervisory positions, even though it had been replaced with Revision 3 by that time. The employees assert that they were never notified of the modifications made to Revision 1 of A.O. Smith's severance policy. It provides:

## TERMINATION PAY

Under certain conditions non-union salaried employees whose jobs are abolished and who are *permanently terminated*

from the company may receive termination (job abolition) pay.[*]

Such termination pay is one-fourth of a month's regular salary for each *full* year of continuous service up to a maximum of 30 years' service. Minimum termination pay is one-half of a month's pay; termination pay is in addition to any vacation pay due the employee.

[*] Refer to Corporation Policy Manual PR–22 for detailed information. (emphasis in original).

Appellants' Appendix at 123. Revision 1, however, provided for a deduction for unemployment compensation:

If the applicable state statute permits unemployment compensation during the period covered by termination pay, a deduction from termination pay, equal to potential unemployment compensation, during a period equal to that covered by termination pay, shall be made, subject to the minimum payment provided in D.1.

Appellee's Appendix at 105. The Revision 3 policy had no provision for an unemployment deduction. Despite the deduction for unemployment compensation, Revision 1 is more generous than Revision 3.

The employees were promoted to supervisory positions between 1972 and 1976. During those years, supervisors' duties and benefits were outlined in a large loose-leaf Supervisor Handbook ("the handbook"). The handbook was updated periodically with replacement pages. Apparently through an oversight, the page containing Revision 1 was not replaced when Revision 3 was adopted in 1970. The Revision 1 formula still was included erroneously in Section VIII–5, the "Wage and Salary Administration" section.

In 1976, A.O. Smith replaced the handbook with a pocket-sized "Supervisor's Manual" ("the manual"). This manual contained no information on, or reference to, termination benefits.[2] The introduction explained, however, that:

---

1. There is no discussion of "Revision 2." There was a Revision 4, which became effective in May 1976. Because its severance pay provisions are identical to those in Revision 3, we shall limit our references to Revision 3. *See* Appellants' Brief at 11, n. 11.

2. The dissent states that the Supervisor's Manual contained a section on employee benefits. This section explains benefits for non-supervisory employees. These benefits do not apply to supervisors, and the section seems to be designed to allow supervisors to explain and administer

The Supervisor's Manual will supplement information in the A.O. Smith Corporation Safety Manual and the A.O. Smith Corporation Policy Manual, both of which are available for supervisor reference. They are located in the offices of the division managers, staff heads (including superintendents) and company officers. The A.O. Smith Corporation Policy Manual (in effect since 1970) has contained Revision 3 of the severance pay formula. When A.O. Smith distributed the new manuals, it also circulated a newsletter, informing all supervisors that

[A] new AOS Supervisor's Manual will be distributed to replace the Supervisor's Handbook used for the past ten years. The new manual, pocket sized for your convenience, will contain current, valuable information for reference in your day-to-day activities.

In preparation for this distribution, we are collecting the old Supervisor's Handbooks. Please return your copy to the general superintendent in your area.

Upon receiving your new copy, please complete, sign and return the receipt form located inside the front cover. You will be held responsible for maintaining your copy and returning it on request. Any revisions to this manual will be sent to you as required.

■ Despite the recall of the handbooks, the handbooks were not collected, but were "laying all over" the A.O. Smith facility. Appellants' Brief at 9. All the plaintiff-employees testified in deposition that they were unaware of Revision 3 and the updated policy. They claim they relied upon Revision 1, the formula in the recalled handbooks, and that the new manuals did not put them on notice of the correct policy. As a consequence, they argue, they are entitled to payment under Revision 1. They maintain, however, that they should not be subject to the deduction for unemployment compensation required by Revision 1.

■ The employees offer two arguments to support their position. First, they contend that, under 29 U.S.C. § 1022(b), any circumstances resulting in a loss of benefits otherwise reasonably expected must be set forth in the Plan document. This argument is unavailing because Revision 1 made an explicit reference to the Corporate Policy Manual (the Plan) which contained the provision regarding unemployment compensation. Second, the employees assert that no unemployment compensation deduction should be made because "the PR-22 corporate policy [Revision 3], at the time that the supervisors were given the handbooks ... excluded a reduction...." Appellants' Brief at 5. In other words, because the policy in effect did not require a deduction, the employees are entitled to the Revision 1 formula without the reduction. This argument seems illogical on its face.

In addition to the mix-up with the handbooks and Revisions, it is undisputed that A.O. Smith failed to comply with ERISA's reporting provisions. It did not provide participants with the required five- and ten-year plan summaries, nor did it make the necessary periodic filings with the Secretary of Labor. *See* 29 U.S.C. § 1024. The employees initially brought suit in the Milwaukee County Circuit Court in August 1988, alleging that A.O. Smith breached their employment contract because it improperly calculated severance pay, holiday shutdown pay, vacation pay and Christmas bonuses. The case was set for trial, and summary judgment motions were pending, when the trial court granted the employees' motion to amend their complaint. The new count alleged that A.O. Smith's failure to pay severance pay under Revision 1 violated ERISA. A.O. Smith removed the entire action, asserting that the federal courts have original jurisdiction over the ERISA claim under 28 U.S.C. § 1331 (1988). The parties filed summary judgment motions in the federal action, and the

---

their subordinates' benefits. Thus, the only information on supervisor benefits was contained in the A.O. Smith Corporation Policy Manual. In other words, supervisor benefits, i.e. vacation time, medical benefits, or severance pay, were explained only in the Corporation Policy Manual.

district court granted summary judgment in favor of A.O. Smith. The employees appealed.

## II.

It is well established that review of a district court's grant of summary judgment is *de novo*. *See, e.g. La Preferida, Inc. v. Cerveceria Modelo, S.A.*, 914 F.2d 900, 905 (7th Cir.1990). In order to uphold a grant of summary judgment, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion," *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990), and conclude that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *First Wisconsin Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir.1990).

■ The parties do not dispute that A.O. Smith's severance pay plan is an employee welfare benefit plan governed by ERISA. 29 U.S.C. § 1002(1) (1988). *Young v. Standard Oil*, 849 F.2d 1039, 1045 (7th Cir. 1988), *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984). ERISA preempts all state law claims for severance benefits. *Young*, 849 F.2d at 1043. The district court properly found, therefore, that the employees' breach of contract claims are preempted. *Kreutzer v. A.O. Smith Corporation*, No. 80 C 1122 (E.D.Wis. Oct. 16, 1990).

■ ERISA imposes certain obligations upon administrators of welfare benefit plans, although they are less rigorous than those imposed upon administrators of employee pension benefit plans. *See* 29 U.S.C. §§ 1051(1), 1081(a). These obligations include filing an annual report with the Secretary of Labor that describes the plan, sets forth its assets and liabilities, and includes other information. 29 U.S.C. § 1023(a), (b). Employers administering welfare benefit plans must also provide all participants with a summary plan description "calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to reasonably apprise such participants and bene-

ficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Welfare benefits, moreover, do not vest like pension benefits, and an employer unilaterally may change or abolish them without violating ERISA. *Young*, 849 F.2d at 1045. The employees contend that A.O. Smith's failure to provide more explicit notice of the correct severance formula coupled with its non-compliance with ERISA's reporting provisions, entitles them to benefits under Revision 1.

■ The fact that A.O. Smith technically violated ERISA does not help the employees in this case. An employer's procedural violations of ERISA entitle employees to monetary relief only in exceptional cases. *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 920–21 (3d Cir.1990); *Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393 (7th Cir.1983). Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted. *See Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (active concealment); *Govoni v. Bricklayers, Masons & Plasterers*, 732 F.2d 250, 252 (1st Cir.1984) (collecting cases requiring reliance and prejudice).

In *Wolfe*, the employer denied an employee's claim for disability benefits, but failed to state the reasons for the denial. It also did not explain how the employee could overcome the deficiencies in his application for benefits as required by 29 U.S.C. § 1133(1). 710 F.2d at 392–93. Although this court held this procedural error was a "significant error on a question of law, erroneously interpreting and applying section 1133," we did not find that it warranted a substantive remedy. *Id.* at 393. Instead, we remanded the case to the employer for a new determination of the employee's claim.

Arguably, the employer's action in *Wolfe* was more prejudicial than A.O. Smith's ac-

tions were in the instant case. Because J.C. Penney failed to explain the weaknesses in Mr. Wolfe's application for disability benefits, there was a clear possibility that he would not receive benefits to which he was entitled. In the case at bar, however, the employees were not disadvantaged by A.O. Smith's failure to file the proper documents with the Secretary of Labor. Though some confusion may have been generated by A.O. Smith's failure to diligently collect the handbooks containing Revision 1, this oversight does not raise the same specter of prejudice as the procedural violation in *Wolfe*. One hundred ten supervisors received severance pay pursuant to Revision 3. The employees submit no evidence or argument indicating why they are entitled to more severance pay than other terminated A.O. Smith supervisors. Because the employees provide no evidence of prejudice, *Wolfe* is unavailing.

*Berger v. Edgewater Steel Co.*, 911 F.2d 911, 920–21 (3d Cir.1990), presents a more analogous situation to the case at bar. In *Berger*, the employees alleged they were entitled to severance pay because their employer failed to comply with ERISA's disclosure requirements in connection with its severance policy. *Id.* at 920. The court found that the severance policy was not described or distributed to employees, and that there was no claims procedure. Further, the terms were "rather cryptic." *Id.* The employer claimed that company practice under the policy was clear: only employees laid off and not eligible for any sort of pension were given severance pay. The employees contended that it was common knowledge that when any employee retired, the employee was given severance pay.

The plaintiffs in *Berger*, just like the employees in the case at bar, base their claim upon *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). In *Blau*, the employer actively concealed its severance policy and had no claims procedure, thereby violating ERISA's procedural requirements. *Id.* at 1350–51. The employer's active concealment of the plan was compounded by evidence of inequitable treatment of employees. At oral argument, counsel also informed the court that under the secret policy, severance pay would be available for company executives but not for salaried non-union employees. *Id.* at 1356. Based on these findings, the *Blau* court determined that

> [w]hen procedural violations rise to [this] level ... they alter the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally. The quantity of defendants' procedural violations may then work a substantive harm.... We hold that the type of plan administration practiced by Del Monte is highly probative of whether a particular decision to deny benefits was infected by its having been made in conformity with the objectionable scheme.

*Id.* at 1354. The court in *Berger* distinguished *Blau*, finding that the employer's violations and administration of the severance plan did not rise to the level of the violations in *Blau*. Because there was no evidence of active concealment or unfair administration of the severance policy, the *Berger* court refused to award the employees benefits under the policy. We agree with the distinctions drawn by the *Berger* court.

Moreover, in the instant case, A.O. Smith's violations of ERISA's reporting and summary requirements were even less prejudicial to employees than those in *Berger*. Although A.O. Smith failed to send the Secretary of Labor the required reports, and to give the employees summaries of the severance plan, it did notify the employees where they could find the plan. A.O. Smith did not explicitly revoke Revision 1. Nevertheless, since the current plan went into effect in 1970, 110 supervisors received severance pay pursuant to it. Copies of the benefits plan were readily available to the employees. In fact, before the terminations, two of the plaintiff-employees (Alan Allen and John O'Shea) who were temporarily laid off received "lay off inconvenience pay" computed under the current policy. Appellee's

Brief at 11. The replacement manual did not include a severance pay formula. In fact, the pocket-sized manual contained no information on supervisors' benefits. Unlike the recalled handbook, the manual instructs supervisors only on the performance of their duties, without providing benefit information. Appellants' Brief at 9.

There is no evidence that A.O. Smith acted in bad faith, or otherwise attempted to conceal its severance policy. The employees' position is weakened further by their inconsistent claim for the benefit of the 1965 version of the policy without the burden—they assert they are entitled to the more generous formula, but are not subject to the deduction for unemployment compensation this formula requires. As we discussed above, this contention is irrational.

Moreover, the employees rely on other sections of the A.O. Smith Corporation Policy Manual, which they contend was "undisclosed," for their holiday and vacation pay claims.[3] These inconsistencies undermine the employees' assertion that they reasonably relied upon the 1965 severance policy in the handbook. The supervisors all presumably received benefits (such as vacations and holiday pay) during the period between the recall of the handbooks and distribution of the manuals (1976), and their termination (1987). The only source of information on these benefits was the A.O. Smith Policy Manual. This Policy Manual also contained the correct version of the severance policy. The severance policy has not changed since 1970 and has been uniformly applied. Any reliance upon the handbook and the 1965 policy, in this context, was unreasonable. We agree with the district court that in light of the undisputed facts, A.O. Smith is entitled to judgment as a matter of law.

### III.

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

**3.** The pendent state law claims for vacation and holiday pay were dismissed without prejudice by the district court when it entered summary judgment in favor of A.O. Smith. *See* Appellee's Brief at 3.

ESCHBACH, Senior Circuit Judge, dissenting.

I respectfully dissent because I believe that the majority's opinion renders the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1988) ("ERISA"), precatory by allowing employers to violate its provisions freely. First, the majority gives short shrift to the statutory provisions of ERISA as well as its clear protection-of-employee policy. I also believe that the majority understates the severity of A.O. Smith Corporation's ("Smith") ERISA violations. This understatement causes the majority to treat Smith's violations as insignificant "technicalities" rather than as violations that go to the very heart of the harms that ERISA was designed to eliminate. Accordingly, I would reverse the judgment of the district court, and remand for an entry of judgment in favor of the employees (the "Supervisors").

ERISA, enacted in 1974, is a comprehensive remedial statute designed to protect workers by strengthening the private pension and benefit system through mandatory procedural requirements applicable to employers who administer such pension and benefit plans. *See generally* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639 ("H.R.Rep. No. 533"). ERISA mandates no substantive benefits for employees; it is purely procedural. This means that an employer is not *required* to have, for example, a severance pay benefit, but only that if it chooses to do so it must administer that benefit in accordance with ERISA's procedural requirements. Section 1132 of ERISA empowers an employee, once an employer chooses to have a plan, to bring a civil action in federal district court to "enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, ERISA protects employees through two related avenues. It allows employees to sue to enforce employee benefit plans and it establishes certain procedural require-

ments for employers who administer those plans.

More specifically, ERISA's disclosure and reporting procedures, see 29 U.S.C. §§ 1021–1031, and a claims procedure, *see* 29 U.S.C. § 1133, require the employer to provide the employee with a summary plan written in a manner calculated to be understood by the "average plan participant." *Id.* § 1022(a)(1). The summary must be "sufficiently accurate and comprehensive to apprise [the employees] of their rights and obligations under the plan." *Id.* Moreover, the employer must provide an updated summary, every five years if the plan is amended, but in no event later than every ten years. *Id.* § 1024(b)(1). The updated summaries are subject to the same content requirements as the initial summary. *See id.* § 1022 (described immediately above).

Smith concedes that it complied with none of ERISA's requirements. Appellee's Brief at 11–12. The question is the Supervisors' entitlement to hold Smith accountable for its violations. Here, the majority thwarts the Supervisors' attempt to enforce the terms of their severance plan under section 1132. In so doing, I believe the majority significantly understates the severity of Smith's ERISA violations. The Supervisors argue that Smith did not give

them the severance pay to which they were entitled when they were terminated in 1987 as part of a reduction in force. The Supervisors seek the amount of severance pay that would have been due them if it had been calculated under a formula contained in a "Supervisor Handbook" that was distributed by Smith between 1965 and 1976, the time frame during which each Supervisor was promoted to his position. Smith, however, paid the Supervisors according to a formula contained in "Corporation Policy Manual PR–22." PR–22's severance formula provides for approximately $38,000 less in severance pay than the Supervisor Handbook formula.[1] I believe that Smith's disregard of ERISA's reporting and disclosure provisions prevented the Supervisors from discovering Smith's intention not to abide by the formula in the Supervisor Handbook. Smith did not merely commit an isolated violation of ERISA, which the Supervisors could have overcome by minimally diligent investigation. Rather, Smith flagrantly and repeatedly ignored ERISA's requirements over a period of thirteen years. In 1970, Smith revised PR–22 to delete a deduction from severance pay for unemployment compensation. Smith, however, failed to make these changes in the Supervisor Handbook then or anytime after 1974, when ERISA was promulgated.[2] Of

1. The following is a table of the amounts of severance pay in dispute:

| Name | Amount Due Under Supervisor Handbook | Amount Due Under Policy PR–22 | Difference |
|---|---|---|---|
| Allen | $12,756 | $7,972 | $4,784 |
| Cartwright | $17,374 | $9,477 | $7,897 |
| Hinze | $14,368 | $7,983 | $6,385 |
| Jeske | $12,992 | $8,120 | $4,872 |
| Kreutzer | $11,917 | $7,945 | $3,972 |
| O'Shea | $10,692 | $6,110 | $4,582 |
| Veigh | $13,417 | $7,892 | $5,525 |

2. The formula in the Supervisor Handbook does not contain a deduction for unemployment compensation; it is this formula that the Supervisors ask us to enforce. I believe the majority misconstrues the nature of the Supervisors' argument. The Supervisors argue that their severance pay should not be reduced by unemployment compensation to which they are entitled. Calling the Supervisors' argument "illogical on its face," *see supra* at 5, the majority reads this argument as asking for the best of both worlds. However, "[t]he supervisors are not asking for the application of the 1965 PR–22 plan. They

are seeking enforcement of the formula stated in the Handbook. That benefit description did *not describe a forfeiture of benefits equal to an amount* of unemployment compensation benefits and, between 1972 and 1975 when these supervisors were given the Handbook, the corporate plan expressly excluded deductions for unemployment compensation payments." Reply Brief at 6 (citations to record omitted). Any revisions to PR–22, because they were not disclosed to the Supervisors, are simply irrelevant to the Supervisors' request that the formula contained in the Handbook—the disclosed formula—be enforced.

course, Smith's failure to revise the Supervisor Handbook would not have prejudiced the Supervisors had they been informed of the changes in some other way. But Smith never distributed PR–22 to the Supervisors; the Supervisor Handbook merely contained a footnote reference to PR–22 as a source for "detailed information." Moreover, the Supervisors had no reason to consult PR–22, as each one had been told that the Supervisor Handbook was his "Bible." Thus, none of the Supervisors ever consulted PR–22 for any reason. *See, e.g.,* Documents in Support of Motion for Summary Judgment at 106, 114, 121, 130–31, 141, 152, 160–62.

In 1976, Smith confused matters further. Smith distributed a new "Supervisor's Manual" that contained no information whatsoever about severance pay, although the document was lengthy and contained a section entitled "Employee Benefits." See Documents in Support of Motion for Summary Judgment, Supplement B (*"Supervisor's Manual"*). Moreover, Smith never physically recalled the now inaccurate Supervisor Handbooks, but only nominally recalled them in a newsletter. *See* Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Demand for Jury Trial at Exhibit A. Even if the Supervisors had consulted the new Supervisor Manual, however, they would not have been accurately informed. As with the Supervisor Handbook, the Supervisor's Manual generally referenced the "A.O. Smith Corporation Policy Manual" in its introduction. *See Supervisor's Manual.* Still, no notice was distributed to employees indicating that severance pay policy was other than as explained in the Supervisor Handbook. Therefore, at the time of their termination, the *only* document that the Supervisors had ever received describing severance benefits was the original Supervisor Handbook on which

they have relied. All the Supervisors ask is that the Court enforce the terms of that document.

Smith failed to fulfill any of ERISA's obligations, and as a result prevented the Supervisors from discovering that Smith's severance formula was other than as stated in the Supervisor Handbook. Yet, Smith now contends, and the majority agrees, that the Supervisors are not entitled to enforce the only version of the severance plan they ever received—the Supervisor Handbook. I respectfully disagree. Section 1132 specifically allows an employee to bring an action to enforce the terms of an employee benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B). The Supervisors are not asking us to graft a substantive provision onto Smith's severance plan; nor do they ask us to impose any other substantive remedy such as punitive damages.[3] The Supervisors simply ask us to enforce the severance pay formula that Smith itself established and distributed, and on which the Supervisors' severance pay expectation was based. I believe this is precisely the kind of civil action contemplated by section 1132. Indeed, the absence of any substantive remedy in ERISA for Smith's violations militates in favor of allowing employees to sue to enforce an employee welfare benefit plan where the employer's violations have resulted in a loss of the employee's expected benefit. Otherwise, there would be no way of ensuring employer compliance with ERISA and the statute would be entirely stripped of its force.

In the past, courts have allowed employees to recover benefits under other than the "official" version of an employer's plan where the employer's violation of ERISA has been severe, *see Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), or where there was a

---

3. This distinguishes this case from those that have held that in the absence of explicit statutory provision, ERISA does not entitle a plaintiff to "extracontractual" remedies. *See, e.g., Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210 (4th Cir.1990) (damages for emotional distress not available under ERISA); *Bishop v. Osborn Transp., Inc.,* 838 F.2d 1173 (11th Cir.)

(punitive damages not recoverable under ERISA), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). The Supervisors do not seek extracontractual damages; they ask us to enforce one version of Smith's severance plan (the Supervisor Handbook) over another (PR–22).

conflict between a disclosed summary booklet and an undisclosed official plan. *See Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990). This case contains elements of both *Blau* and *Heidgerd.* Smith's ERISA violations are as severe as those in *Blau*, and there is a conflict between a disclosed summary and an incompletely disclosed official plan as in *Heidgerd.*

There have also been cases, as the majority correctly recognizes, where an employer's technical violation of ERISA has not risen to the level where a court has found a substantive remedy warranted. *See, e.g., Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir.1983). In the present case, I believe that Smith's repeated, flagrant, and long-running ERISA violations are not mere technical violations for which a substantive remedy is unnecessary or inappropriate. Rather, Smith's violations rose to the level where an "average plan participant," that is, the Supervisors,[4] would not have understood that the Supervisor Handbook severance pay formula was revoked or modified, as required by ERISA. *See* 29 U.S.C. § 1022(a)(1). Put differently, I differ with the majority's reliance on *Wolfe* and *Berger;* I would rely instead on *Blau* and *Heidgerd* and enforce the only severance policy Smith disclosed to the Supervisors—the one in the Supervisor Handbook. I believe the majority misclassifies this case because it fails to impart the proper significance to Smith's wholesale disregard of ERISA's requirements.

First, in deciding which severance policy to enforce, both *Blau* and *Heidgerd* are instructive. Both *Blau* and *Heidgerd* recognized that violations of ERISA's reporting and disclosure provisions may "infect" an employee's substantive rights by altering the balance of knowledge between employer and employee that ERISA seeks to regulate. *Blau*, 748 F.2d at 1353–54; *Heidgerd*, 906 F.2d at 906–07. In *Blau*, the "infection" occurred because of the sheer breadth of Del Monte's ERISA violations. As the Ninth Circuit noted, "the undisputed facts show that defendants failed to comply with virtually every applicable mandate of ERISA." *Blau*, 748 F.2d at 1353. In addition, the Ninth Circuit indicated that the severance policy was "actively concealed" because it was labeled "confidential" and only certain employees were allowed to know of its existence. *Blau*, 748 F.2d at 1350, 1352. As Smith concedes, it too failed to comply with every applicable mandate of ERISA. In describing Del Monte's actions, the Ninth Circuit could have been describing Smith's: "Here, there was no summary plan description, no claims procedure, and no provision to inform participants in writing of anything. Del Monte's claims procedure fails simply because there was none." *Id.*

Likewise, Smith had no claims procedure, did not inform participants in writing that their severance plan had changed, did not include information on its severance plan in the Supervisor's Manual, and now seeks to disavow the only document that the Supervisors ever received describing the severance plan. The majority nevertheless finds the Supervisors' case far different from *Blau* because *Blau* involved "active concealment." I differ. The majority relies on the district court's comment that there was no evidence that Smith acted in "bad faith." But the majority improperly assumes that it is the employer's point of view, rather than the employee's, that matters. With all due respect, I believe that ERISA's emphasis on *disclosure*, not necessarily *fraud* or other wrongdoing, mandates that the employee's perspective is key. Whether the employer "actively con-

---

**4.** I cannot conclude that their reliance was "unreasonable" when Smith has come forward with nothing to show that the Supervisors were other than "average plan participants." The Supervisors' uncontradicted affidavit testimony is that they relied upon the severance formula contained in the Supervisor Handbook. On cross-motions for summary judgment, the district court could not have rejected that testimony on grounds of credibility. Therefore, in the absence of any indication that the Supervisors were either incredible or less able than an average plan participant to discern that their rights were other than as spelled out in the Supervisor's Handbook, I would enforce that disclosed policy.

ceals" the official plan, or simply does not disclose it, the effect on the employee is the same: he is not aware of his rights. And a failure to disclose for thirteen years is every bit as prejudicial to the employees as a single instance of active concealment.

Similarly, in *Heidgerd,* the Second Circuit refused to allow Olin to benefit from an undisclosed plan document. "Olin cannot now rely on language in a document that did not comply with ERISA to contradict the Booklet, which was filed." *Heidgerd,* 906 F.2d at 907. In *Heidgerd,* Olin had attempted to comply with ERISA by filing its plan summary booklet; however, it did not file the official plan as required under 29 U.S.C. § 1021(b). The Second Circuit upheld a district court's ruling that the language of the summary booklet controlled. ERISA "contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd,* 906 F.2d at 907; *accord McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566 (11th Cir. 1985) (distributed plan summary controls when it and terms of undistributed official plan conflict).

In this case as well, the version of the severance benefit that Smith explicitly disclosed, and on which the Supervisors relied, should be enforced. As Judge Posner has stated: "In the event of a conflict between handbook and plan, the former may trump—clearly so, when it is the employee relying on the handbook, for it is hardly realistic to expect him to read further." *Fuller v. CBT Corp.,* 905 F.2d 1055, 1060 (7th Cir.1990), citing *Edwards v. State Farm Mutual Automobile Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988); *accord Heidgerd,* 906 F.2d at 906–10. Resolving such conflicts in favor of the document on which the employee has relied comports with ERISA's emphasis on proper disclosure.

As Justice Brandeis once stated, "Sunshine is the best disinfectant." In approving ERISA, the House noted the dangers of poor communication between employer and employee: "It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in plan booklets." H.R.Rep. No. 533. Here, a conflict existed between the Supervisor Handbook and PR–22; that conflict was not diminished when the Supervisor's Manual came out in 1976—first, because it did not mention severance pay; second, because Smith was not diligent in collecting the Supervisor Handbooks; third, because Smith did not clearly advise employees in the Supervisor Manual or in its newsletter that the Supervisor Handbooks were superseded or no longer contained valid information; and fourth, because Smith used no other mechanism to apprise employees that the severance formula (or any other benefit) was other than as explained in the Supervisor Handbook. Accordingly, I would enforce the severance formula as expressed in the Supervisor Handbook.[5]

It is unclear whether the majority is relying on *Berger* for the proposition that ERISA may never give rise to a substantive remedy or whether the majority is relying on *Berger* solely for factual distinctions. To the extent the majority has chosen the first route, I suggest that this Circuit decline to follow the path laid down in *Berger. See Berger,* 911 F.2d at 921. As noted above, categorically rejecting the possibility of awarding a substantive remedy to a plaintiff for a defendant's flagrant procedural violations is inconsistent with section 1132. *See* 29 U.S.C. § 1132. To the extent the majority relies on *Berger* for factual distinctions, I note that *Berger* employed a less rigorous standard of review. In *Berger,* the Third Circuit reviewed

---

**5.** In so doing, I am not saying that Smith should have provided the Supervisors with a certain level of severance pay—only that, once having decided to do so, that Smith was statutorily obligated under ERISA to adequately disclose that benefit and any subsequent changes made

thereto so as not to defeat the justifiable expectations of its employees. Smith could have chosen to have policy "X" or policy "Y" or no policy at all. However, it could not disclose "X" and then pay the employees according to "Y", or not pay them at all.

Edgewater Steel Company's actions under the "arbitrary and capricious" standard of review, which is appropriate where the employer retains discretion in administering the particular benefit plan. *Berger,* 911 F.2d at 920; *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (explaining appropriate standards of review). Here, however, a *de novo* standard is appropriate because Smith retained no discretion over the severance benefit. *Firestone,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Therefore, I fail to see how the majority can make a principled comparison between the facts in *Berger* and in this case. What's more, I am at a loss as to the logical connection between this part of the majority's opinion and its purported holding that the Supervisors' reliance was "unreasonable." [6]

Finally, the majority's reliance on *Wolfe* is also misplaced. In *Wolfe,* we concluded that a plan fiduciary had violated one of ERISA's procedural requirements in denying Wolfe's application for long-term disability. *Wolfe,* 710 F.2d at 392–94. We decided that the fiduciary had denied Wolfe's application in too conclusory a fashion: the letter of denial failed to inform Wolfe adequately of the reasons for denial and failed to indicate the type of information which Wolfe needed to submit in order to strengthen his claim for long-term disability benefits. *Id.* at 392–93. We remanded the case (through the district court) to the fiduciary for a redetermination, according to ERISA's procedural requirements, of Wolfe's claim. *Id.* at 393. Thus, in *Wolfe* we faced an isolated instance of a procedural violation that could

be cured by the plan fiduciary. Here, however, we face flagrant and repeated violations of all of ERISA's requirements, not just an isolated and easily cured instance.

The burden is on Smith to ensure that employees are apprised of their benefits and any subsequent modifications; the burden is not on employees to discover benefits or changes. *See, e.g.,* 29 U.S.C. § 1001 (statement of policy). Smith created tremendous confusion through its many ERISA violations. It cannot now rely upon that confusion to condemn the employees' behavior as unreasonable. Had Smith done no more than comply with ERISA's updating requirement, at the latest in 1986 (10 years after the new Supervisor's Manual was distributed), the Supervisors would have been aware of the severance formula under which they subsequently would be paid when terminated in 1987. Even this, Smith did not do.

Again, I agree with the majority that ERISA is procedural by nature. But one of those procedures is section 1132, which allows an employee to bring a civil action to recover benefits due him under a plan. *See* 29 U.S.C. § 1132(a)(1)(B). If Smith can avoid paying the Supervisors severance pay under the only formula that the Supervisors ever received, then employers are free to violate their employees' expectations without any effective notice to the employees. I decline to support such a departure from the clear purpose of ERISA and therefore respectfully dissent.

---

**6.** Furthermore, I fail to see the relevance of the majority's reliance upon the severance formula Smith allegedly used for 110 other employees. First, the Supervisors contend that most of those employees were terminated at the same time that the Supervisors were terminated, making it unlikely that the Supervisors would have been aware of the amount of money they received or the method by which it was calculated. Second, when an employee is terminated the amount of severance pay and other benefits received is not generally a topic of widespread knowledge or discussion; in fact, it is often considered "confidential." Finally, to the extent

Smith's treatment of these other employees is relevant at all, I would not reward Smith for having violated ERISA in its dealings with many other employees as well.

Similarly, the majority's reliance upon the Supervisors' alleged "awareness" of PR–22 in regard to the Supervisors' state law claims is misplaced. This "notice" argument is at best a factual determination, and one not borne out by the record, at that. Smith and the majority hold the Supervisors accountable for documents and information obtained in the discovery process of this case.