William L. HAMILTON, et al., Plaintiffs,

v.

ONTARIO FORGE CORPORATION and Ontario Corporation, Defendants.

No. IP 91–36–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 20, 1992.

3. Order dated May 24, 1991, by Judge Mihm.

Frederick W. Dennerline, III, Fillenwarth Dennerline Groth & Towe, Indianapolis, Ind., for plaintiffs.

James L. Petersen, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendants.

BARKER, District Judge.

## I. Background

Ontario Corporation sold the assets of its successor corporation, Ontario Forge Corporation, to AeroForge, on January 12, 1989. Ontario Forge Corporation ceased operations and discharged its employees on Friday, January 13, 1989 (Friday the 13th). However, Ontario Corporation arranged the asset sale such that the non-union Ontario Forge Corporation employees (forty-three in total) would retain their jobs and work for AeroForge on the following Monday. Ontario Forge Corporation did not pay those forty-three employees severance benefits.

In response, twenty-five of those forty-three former non-union Ontario Forge Cor-

poration employees filed this complaint, claiming that the Ontario Corporation and the Ontario Forge Corporation (hereinafter referred to collectively as Ontario) (1) failed to follow and (2) failed to disclose the terms of its own unwritten severance pay policy, and in doing so, violated §§ 502(a)(1)(B) and (g) of ERISA, citing 29 U.S.C. §§ 1132(a)(1)(B) and (g).

Ontario generally denied those allegations (in its answer) and filed a motion for summary judgment with supporting affidavits, claiming that its unwritten severance policy [1] provides benefits only to those discharged employees who suffer an unexpected and undeserved period of unemployment.[2] Because the severance policy serves to compensate employees for an unexpected period of unemployment, so Ontario claims, it decided not to pay severance to the Ontario Forge Corporation employees who retained their jobs with the purchasing corporation, AeroForge.

Ontario further asserts that the structure of the severance policy—to pay benefits in a lump sum based on accumulated sick leave—is based on administrative ease, and this practice should not be interpreted as evincing an intent to reward employees for long service. As to the claim that it failed to disclose the details of its severance plan, Ontario admits that it did not comply with ERISA's reporting requirements, but submits that such a failure does not entitle the plaintiffs to a substantive remedy.

The plaintiffs oppose Ontario's motion for summary judgment. They claim that because the severance policy is unwritten, this Court must ignore Ontario's affidavits (from the severance policy administrators who explain their understanding of the substance and intent of the severance policy) and focus only on the structure of the policy to determine its intent and application. The plaintiffs claim that the structure of the severance policy evinces an intent to reward past service, not compensate for a period of unexpected unemployment. However, the plaintiffs concede they have no evidence to support their version of the unwritten policy, having merely "presumed" this intent, and they "do not assert these presumptions as fact." Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 2.

Alternatively, the plaintiffs claim they are entitled to severance pay because they were unemployed for two days (the time of the intervening weekend). The plaintiffs claim:

> If someone had asked Plaintiff William Hamilton on [Sunday] January 14, 1989 who was his employer, Mr. Hamilton would have had to reply that the [sic] had no employer, that on January 13 he had been employed by [Ontario Forge Corporation], and on January 16 he would be employed, he hoped, by Aero Forge. On January 14 and 15, however, Mr. Hamilton and all of the other Plaintiffs were unemployed in that they had no employer.

Plaintiffs' Response to Defendants' Motion for Summary Judgment, p. 10.

## II. Discussion

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions, and affidavits do not raise a genuine issue of material fact. Federal Rule of Civil Procedure 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

### The Unwritten Policy

■ The plaintiffs offer no evidence, direct or otherwise, to rebut Ontario's claim that the unwritten severance policy pro-

---

**1.** Ontario does not contest that the plaintiffs were discharged without notice or cause.

**2.** The parties do not dispute that Ontario's unwritten severance pay plan is an employee benefit plan governed by ERISA. *See* 29 U.S.C. § 1002(1) (1988).

vides benefits only for discharged employees who are subsequently unemployed. Rather, the plaintiffs ask this Court to ignore the presented evidence, Ontario's affidavits, and even their own depositions and look only to the structure of the severance policy to determine its purpose and application.[3] This, however, the Court is not at liberty to do.

The uncontroverted evidence in this case is that Ontario employs an unwritten severance pay policy, under which Ontario affords severance pay to employees it discharges (without cause or notice) who are subsequently unemployed; "the determining factor regarding severance pay is whether 'the company ha[s] created unemployment.'" Deposition of Kelly N. Stanley, p. 31. The intent of this policy is to compensate a discharged employee for an unexpected and undeserved period of unemployment. *See Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir.1983) (severance policies are generally instituted to assist employees during a period of unemployment). *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626–27 (6th Cir. 1987).

Looking to "any and all indicia of the plan's intent and purpose," as the plaintiffs request, the plaintiffs' wobbly reward-based severance pay theory collapses upon examination of other aspects of the severance pay policy. For example, Ontario does not afford severance pay when an employee retires, ordinarily a good occasion to reward an employee; nor does it pay severance benefits when an employee voluntarily leaves for another job. In addition, the evidence in this case indicates that when severance is paid, it is paid in a lump sum for administrative convenience:

Q: Do you know who made the decision that the termination pay would be paid in a lump sum?

A: It was probably my recommendation.

Q: And why would you have made such a recommendation?

A: To eliminate the administrative problem of keeping track of pay for people who were no longer there, to keep from going over a year-end and hav[ing] to do a W–2 for a couple weeks into a new year.

Deposition of George Benson, p. 22.

Simply put, the uncontested facts in this case support Ontario's interpretation of the unwritten policy; in contrast, the plaintiffs' version of the policy is without factual support.

Review of the Application of the Policy

■ ERISA does not specify a standard of review to evaluate an employer's denial of benefits. However, the Seventh Circuit has recently held, in light of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that an employer's severance policy is reviewed under an "arbitrary and capricious" standard where the plan allows an administrator discretion, but under a *de novo* standard where the plan allows an administrator no discretion. *Petrilli v. Drechsel*, 910 F.2d 1441, 1445 (7th Cir.1990); *see Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 750 (7th Cir.1991) (Eschbach, dissenting).

■ Here, the uncontested facts disclose that Ontario's unwritten policy affords administrators discretion in deciding whether to award benefits. Stanley deposition, pp. 64–65, 87–88, 100–101; Hamilton deposition, pp. 37–38, 45, 49; *see Petrilli v. Drechsel*, 910 F.2d at 1447 ("a plan that empowers the administrators to 'construe and interpret the plan' brings the plan within *Bruch's* exception to the *de novo* review"). Thus, this Court reviews Ontario's decision not to award severance benefits according to an "arbitrary and capri-

---

**3.** The plaintiffs conclude their response to Ontario's motion for summary judgment stating: While the Plaintiffs have no direct evidence that the severance policy of [Ontario Forge Corporation] was intended to compensate for years of service, [Ontario Forge Corporation] has no evidence in favor of it proposition.

The only cognizable evidence in this case, under the *de novo* standard, is the structure of the benefit itself and the means and manner by which it was provided to affected employees.

Plaintiffs' Response to Defendants' Motion for Summary Judgment, p. 13.

cious" standard; however, even under a *de novo* standard of review, this Court would affirm Ontario's decision to deny severance benefits to the plaintiffs.

The plaintiffs submit they are entitled to severance pay because they were unemployed during the weekend following their termination of employment with Ontario. The plaintiffs so contend, despite plaintiff Hamilton's deposition testimony:

Q: ... So when did you begin work with AeroForge?

A: January the 16th, I think, 1989.

Q: Okay, So I gather that you had no period of unemployment; is that accurate?

A: That's accurate.

Q: Okay. And I presume from the answers to interrogatories ... that you've answered that that's true of all the class members, that they went right from Ontario Forge to Aero-Forge; is that correct?

A: Yes.

Q: So did any of them have any period of unemployment, any of the class members?

A: Not to my knowledge.

\* \* \* \* \* \*

Q: Okay. And they told you [that you would be hired by AeroForge] on Friday, January 13, 1989?

A: I think they did.

Q: Okay. So you're saying, at least as best you can recall, it was the last day that you worked for Ontario Forge that you understood that you had a job with AeroForge; am I right?

A: Yes.

Hamilton Deposition, pp. 6–7, 33–35.

Regardless of whether the plaintiffs were technically "unemployed" on Saturday and Sunday, it is undisputed that the plaintiffs were told on Friday that they would retain their jobs and go to work for AeroForge on the following Monday. It is thus uncontested that Ontario knew that its employees were not going to suffer an unexpected, undeserved period of unemployment.

Because Ontario knew that its employees would not suffer a period of unemployment, it did not offer severance pay. Ontario did not act arbitrarily or capriciously; it acted rationally and in accord with previous applications of the unwritten policy.[4] *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209 (7th Cir.1983); *see Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623 (6th Cir. 1987) ("In determining whether denial of severance pay is valid ... [a] key factor is consistency; i.e., has the employer followed the same approach in similar situations."). The plaintiffs were not left without employment, they did not face an unexpected, undeserved period of unemployment, and the denial of severance benefits was a valid interpretation of the unwritten severance policy. *See Maryonovich v. Market Data Retrieval, Inc.*, 716 F.Supp. 343, 348 (N.D.Ill.1989) ("courts have in the past upheld the denial of benefits in the sale of business situations when the plan instrument expresses a specific concern for protection against the trauma of unemployment").[5]

### Failure to Comply with ERISA's Reporting Requirement

■ ERISA requires administrators of welfare benefit plans to file an annual report with the Secretary of Labor. 29 U.S.C. §§ 1021, 1023; *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991). Employers must also provide all participating employees with a summary of their plan "calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to rea-

---

4. The only other time Ontario sold the assets of a subsidiary was when it sold Channel 55, WFFT–TV; Ontario did not pay severance to those employees who retained their jobs with WFFT–TV's new owner. Ontario did, however, pay severance to the one WFFT–TV employee who was not rehired by WFFT–TV's new owner.

5. Further, although it is not clear whether the plaintiffs challenge the design of the policy— that Ontario should not have a policy where only those employees who are subsequently unemployed receive severance benefits—"design decisions ... are not regulated by ERISA" and that claim would be without merit. *Fletcher v. The Kroger Co.*, 942 F.2d 1137 (7th Cir.1991).

sonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). However, an employer's failure to comply with an ERISA procedural requirement entitles an employee to monetary relief only in "exceptional cases;" to recover for a procedural violation, the plaintiff must produce evidence of bad faith, active concealment, or unfair administration. *Kreutzer v. A.O. Smith Corp.*, 951 F.2d at 743–44.

 Ontario acknowledges that it did not comply with ERISA's reporting requirements in administering its severance pay policy. The plaintiffs, however, fail to allege in their complaint or in their responsive pleadings that in failing to make these disclosures, Ontario acted with bad faith, administered the plan unfairly, or actively concealed the details of the severance policy. Rather, the plaintiffs allege in their complaint, "While the terms of the plan were never communicated to the employees as required by law, the benefits were definitely determinable." Plaintiffs' Complaint, p. 4, ¶ 9.

Although the plaintiffs characterize the policy topic as "hush hush" in their motion for summary judgment, they do not contend that they were not aware of the policy or that the terms of the policy were secret. For examine, plaintiff Hamilton testified:

Q: ... Would you say that ... most people were aware of what Ontario Forge Corporation's severance plan was?

A: Yes.

Q: ... Was it a secret that there was even a severance pay plan?

A: No.

Q: ... Were the terms of the severance plan any secret?

A: No.

Deposition of William Hamilton, p. 20–21.

Simply put, the plaintiffs do not allege bad faith, active concealment, or unfair administration. Further, the plaintiffs do not allege, nor is there evidence, that the procedural violations had anything to do with the decision not to pay severance benefits or that the plaintiffs relied to their detriment on Ontario's omission. *Kreutzer v. A.O.*

*Smith Corp.*, 951 F.2d at 745; *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 949 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990). The plaintiffs admit they were well aware of the unwritten severance policy, and, to the extent the plaintiffs seek damages based only on the procedural violation, that claim is without merit and subject to dismissal.

### III. Conclusion

The plaintiffs have failed to show entitlement to severance benefits under Ontario's severance policy or entitlement to monetary compensation based solely on a procedural violation. Accordingly, Ontario's motion for summary judgment is GRANTED and this case is DISMISSED.

It is so ORDERED.