**Roy A. JACKSON and Carlos E. Serment, Plaintiffs–Appellants,**

v.

**E.J. BRACH CORPORATION, Defendant–Appellee.**

**No. 97–3940.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1999.

Decided May 5, 1999.

974

Carey M. Stein (argued), Ashman & Stein, Chicago, IL, for Plaintiffs–Appellants.

Robert L. Byman, Jenner & Block, Chicago, IL, Michael L. Mulhern (argued), Winston & Strawn, Chicago, IL, Jason L. Peltz, Barlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Roy Jackson and Carlos Serment have sued their former employer, E.J. Brach Corp. ("Brach"), for violating several provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and breach of contract. In addition, Jackson and Serment each has alleged that Brach terminated their employment in violation of Title VII of the Civil Rights Act of 1964

and the Age Discrimination in Employment Act ("ADEA"). With regard to all but one of their claims, the district court granted Brach's motions to dismiss and for summary judgment.

## I. History

In July 1994, Brach, a manufacturer of confectionary products, reduced its workforce by more than 200 salaried employees. The terminations resulted from the suggestion of a consulting group brought in by Brach to increase profitability in light of recent losses due to a decrease in sales. Brach eliminated both Jackson's and Serment's positions as part of this reduction in force ("RIF").

Jackson, an African–American, had worked for Brach for twenty-seven-and-a-half years. He was fifty-years-old when his position as second shift picking line supervisor in the Shipping Department at the Chicago facility was eliminated. Serment, who is Hispanic, had worked for Brach for thirty years. He was fifty-one-years-old when his position as second shift maintenance manager in the Central Services Cell of Brach's Chicago facility was eliminated. Both allege that they met their employer's expectations, were promoted during their time with the company, and were never disciplined.

Once Brach decided to streamline its workforce, the Vice President of Human Resources notified several supervisors dealing with implementing the reduction that they must eliminate jobs without violating Brach's anti-discrimination policy. He wrote: "when deciding which position to eliminate and which employees to lay off, you may only consider job-related criteria such as seniority, quality of work, skill and ability to do the remaining work, productivity, previous work record, prior discipline and attendance." In addition, he specifically stated they could not consider race, color, sex, age, religion, disability, national origin, citizenship status, ancestry, sexual orientation, marital status, parental status, veteran status, military discharge status, or other potential sources of income for the employee. He also noted that Brach would "try to make special accommodations for employees with 20 or more years of service, especially if such employee is 50 or more years of age."

Brach decided to eliminate Jackson's and Serment's positions based on suggestions from the pair's supervising sections. In Jackson's case, the Shipping Department concluded that it could eliminate two positions. It decided to terminate Jackson's position based on seniority and performance. Jackson was the third least senior salaried employee in the department. During his most recent evaluation, his supervisor noted that his performance "Needs Improvement." His rating was the lowest among the employees in his department. Jackson discussed his evaluation with his supervisor and signed off on it. Brach also terminated the position belonging to a fifty–four-year-old white male in this department. In Serment's case, the manager of the Central Services Cell determined that seven positions could be eliminated. All the positions associated with Serment's immediate group within the Central Services Cell were terminated. Of the seven employees who lost their jobs in this section of the company, six were white. Three were younger than Serment, and three were older. Both Jackson and Serment admit to not knowing how Brach selected their positions for termination.

While Brach chose to eliminate these positions, it appears to have reassigned some of the duties associated with each to other employees. Jackson's duties were assumed by his immediate supervisor, who was a forty-nine-year-old Hispanic, and another employee who was a forty-seven-year-old African–American. An employee, who was fifty-seven-years-old and white and in the Central Services Cell, assumed Serment's duties. This employee became the only Central Services Cell manager on the second shift. Brach states that its managers believed the employee replacing Serment had a broader-base of relevant knowledge, more work experience, and

more exposure to the various aspects of the Central Services Cell than Serment.

When Brach notified Jackson and Serment, as well as the other employees, that their positions had been eliminated, the company offered them severance benefits. The offer conditioned the receipt of benefits on the employee's execution of a general release. This release stated that the employee waived any and all claims against Brach, including any potential discrimination claims. Jackson and Serment knew Brach offered employees a severance plan, but did not know until after they had lost their jobs that in order to receive the benefits they must waive their claims against the company. Brach, in fact, had amended its severance plan a year earlier to include the general release requirement. Jackson and Serment claim that Brach failed to disclose or notify them of this change. Neither signed the release. As a result, they did not receive any severance benefits.

Jackson and Serment challenged Brach's requirement that they execute a general release before receiving any severance benefits. They requested a copy of the severance plan under § 1133 of ERISA, and Brach provided them, at the very least, with some of these documents. The pair sought relief by filing suit against Brach. In this suit, they contend that Brach breached an implied employee contract with them and violated several provisions of ERISA.[1] They seek declaratory and monetary relief plus attorneys' fees. The district court granted Brach's motion to dismiss all of their claims, save one, finding that the pair was not prejudiced by Brach's conduct. The court also ruled in favor of Brach as to their breach of contract claim. However, it denied Brach's motion with regard to the portion of their claims dealing with the violation of ERISA's requirement to provide a copy of the summary plan description to partici-

pants who request it within thirty days of the request. The district court eventually granted Jackson and Serment's motion for summary judgment on this issue and awarded them $6920.00.

After receiving right-to-sue letters from the EEOC, but before the court had ruled on their ERISA claims, Jackson and Serment amended their complaint to include claims of race and age discrimination. In a second round of motions, the district court granted Brach's motion for summary judgment as to Jackson's and Serment's discrimination claims. The court concluded that Jackson and Serment failed to demonstrate that the reasons proffered by Brach for their termination were a pretext for discrimination. Jackson and Serment appeal.

## II. Analysis

Jackson and Serment challenge the district court's decision regarding their allegations that Brach did not provide the summary plan descriptions of its severance plan, did not notify employees about modification to the plan, did not file reports required under ERISA, and did not include a claims procedure in the plan. In addition, they contest the district court's grant of summary judgment to Brach as to their discrimination claims.

### A. Jackson and Serment's ERISA Claims

The district court granted Brach's motion to dismiss Jackson and Serment's ERISA claims under Fed. R.Civ.P. 12(b)(6) for failure to state a claim. We review such decisions *de novo*. *See Strasburger v. Board of Educ. Hardin County Community Unit Sch. Dist. No. 1*, 143 F.3d 351, 359 (7th Cir.1998), *cert. denied*, ── U.S. ──, 119 S.Ct. 800, 142 L.Ed.2d 661 (1999). We must accept "the

---

1. In district court, Jackson and Serment alleged Brach violated ERISA by not providing a summary plan description or notice of modifications to the plan; not filing annual reports about the plan to the Department of Labor; and not including a claims procedure in the plan. They also alleged that Brach violated ERISA by failing to send information about the plan to them after they requested it within thirty days of their request.

well-pleaded allegations in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff," *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir.1997). However, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir.1995). Rule 12(b)(6) motions should be granted only if the plaintiff cannot present any set of facts that would entitle her to relief. *See Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996).

■ Congress enacted ERISA to provide comprehensive regulation of certain employee benefit plans. It protects "the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto...." 29 U.S.C. § 1001(b). As we have noted, "employees depend on ERISA for assurance that they will at least know what their benefits are so that they can plan accordingly." *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 793 (7th Cir. 1996).

■ Under ERISA, severance benefit plans qualify as welfare benefit plans. *See Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.1988). Unlike retirement or pension benefits, welfare benefits do not accrue or vest, *see id.*, and, while subject to some disclosure, *see* 29 U.S.C. §§ 1021–1031, and fiduciary requirements, *see* 29 U.S.C. §§ 1101–1114, these benefits are not governed by the stricter ERISA provisions, *see* 29 U.S.C. §§ 1051, 1081. As a result, employers may freely alter or eliminate these plans without violating ERISA. *See Young*, 849 F.2d at 1045. ERISA, however, does require employers with welfare benefit plans, such as Brach's severance plan, to provide employees with summary plan descriptions that must also be filed with the Department of Labor within the statutorily prescribed time frame. *See* 29 U.S.C.

§§ 1022–1024. After meeting these requirements, an employer must notify its employees of material modifications to the plans within the statutorily allotted time period. *See* 29 U.S.C. § 1024(b)(1).

Jackson and Serment raise their claims regarding Brach's severance plan under § 1132(a)(1)(B) of ERISA "to recover benefits due to [them] under the terms of [their] plan[s][and] to enforce [their] rights under the terms of the plan...." They contend that Brach violated ERISA by never preparing or making available to them or the Department of Labor summary plan descriptions of the company's severance plan and failing to provide notice or copies of the modification to the plan. In addition, Jackson and Serment allege that Brach's failure to file annual reports with the Department of Labor regarding the severance plan and its failure to include a claims procedure in the plan also violated ERISA.

### 1. Standing

In order to bring a claim under § 1132, claimants must establish that they have standing as a "participant" within the meaning of the statute. ERISA defines a "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit ..." 29 U.S.C. § 1002(7). The Supreme Court has interpreted this definition to cover "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks and citations omitted).

■ In light of this interpretation, Jackson and Serment have standing to pursue their claims. In *Panaras*, we concluded that a former employee, with allegations almost identical to those alleged by Jackson and Serment, had established "a colorable claim to vested benefits." 74

F.3d at 790. In order to meet this requirement, the plaintiff, who was in a similar position to that of Jackson and Serment, had to demonstrate that his claim was not frivolous and that it was a claim to "vested benefits." *See id.* Claims "rooted in existing ERISA law" are not frivolous. *See id.* Like the plaintiff's claim in *Panaras*, Jackson's and Serment's claims are based on the argument that they are entitled to their severance benefits even though they refused to sign the general release form because Brach modified the plan without notifying them so as to enable them to adapt their financial planning to adjust for the modification. Thus, we find Jackson and Serment state a non-frivolous claim. As to the second aspect of the test, we have explained that the Supreme Court did not use the term "vested benefits" in the narrow, technical meaning of the term, but rather in a more expansive way. *See id.* at 791. Thus, "standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." *Id.* In light of this explanation, we conclude that like the employee in *Panaras*, the pair has a valid claim to "vested benefits" because Brach promised to provide them with severance benefits if they were involuntarily terminated. *See id.* Therefore, we agree with the district court that Jackson and Serment have standing to pursue their ERISA claims.

### 2. Jackson and Serment's Claim for Monetary Relief

Under ERISA, technical violations do not create a right to monetary relief. Monetary relief is available only "in exceptional cases." *See Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir.1991). Thus, to obtain monetary damages, a plaintiff must establish that "the employer ... acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary

before recovery for procedural violations is warranted." *Id.* Jackson and Serment charge that they established Brach had acted in bad faith and actively concealed the amendments to the severance plan so as to prejudice them. However, we agree with the district court that they failed to meet their burden.

Our decision in *Panaras* controls this case. In that case, the employee, Raymond Panaras, knew that his employer provided a severance benefits plan for employees whose employment was involuntarily terminated. *See* 74 F.3d at 788. Shortly before Panaras learned that he would no longer have a job with his employer, the employer modified the terms of the severance plan to require employees who received these benefits to sign a release of claims against the company. *Id.* After being discharged and refusing to execute the release upon his termination, Panaras sued his employer under ERISA claiming that the employer failed to notify him of this change. *Id.*

Specifically, Panaras claimed that his employer concealed the modifications of the severance plan to induce employees to remain with the company to its own benefit; that this action amounted to bad faith; and that this act prejudiced Panaras by preventing him from adjusting his financial plans in light of the modification. *See id.* at 789. We concluded that he failed to allege prejudice resulting from the lack of notice regarding the modifications of the severance plan with sufficient factual allegations and that his claims regarding his employer's bad faith, concealment, and prejudice also rested merely upon conclusory statements rather than factual allegations. *See id.* at 788, 792–93.

We explain these facts to illustrate that they mirror those presented in the case at bar. In addition, the language in the second amended complaint filed by Jackson and Serment echoes the claims of Panaras almost word-for-word. Jackson and Serment's claims of bad faith and prejudice

center around a single paragraph in their second amended complaint. They state:

Defendant knew or should have known that Plaintiffs would have made other financial arrangements to cover any periods of unemployment following their termination from Defendant if Plaintiffs knew that they would not receive benefits under Defendant's Severance Plan unless they released all of their employment rights, including rights arising out of their termination due to age, race or other discriminatory reasons. Conversely, it was in the best interest of Defendant to conceal from Plaintiffs the requirement that they waive all said rights so that Plaintiffs would not adequately prepare to meet the financial exigencies of unemployment and, therefore, be more easily induced to waive all of such rights in return for such severance benefits. Such conduct constitutes bad faith on the part of Defendant.

This language closely resembles that used by Panaras in his complaint. With regard to his allegation of bad faith, he stated:

Conversely, it was in the best interests of Defendants to conceal from Plaintiff the requirement that he waive all said rights so that Plaintiff would not adequately prepare to meet the financial exigencies of unemployment and, therefore, be more easily induced to waive all such rights in return for such severance benefits. Such conduct constitutes bad faith on the part of Defendants, and each of them.

*Id.* at 792. Panaras's complaint also appears strikingly similar to the first part of Jackson and Serment's statement regarding prejudice. He stated:

Plaintiff would have made other financial arrangements to cover any periods of unemployment following his termination from Defendant[s] if Plaintiff knew that he would not receive benefits under Defendants' Severance Plan unless he released all of his employment rights including rights arising out of his termination due to age or other discriminatory reason.

*Id.* at 793. The haunting similarity makes it difficult to reach any conclusion other than the one we did in *Panaras,* which was that the plaintiff's allegations were entirely conclusory and not supported by factual allegations. *Id.* at 792. Like Panaras, Jackson and Serment provide no factual support for their claims of bad faith and prejudice. Therefore, we find these allegations insufficient to survive a motion for dismissal.

Similarly, Jackson and Serment's allegations of concealment fail to hit the mark. They state in their second amended complaint:

Defendant actively and intentionally concealed the aforesaid requirements of its Severance Plan, and any revisions thereto, until such time as each Plaintiff was terminated. Plaintiffs were not notified where they could find copies of Defendant's Severance Plan until months after their termination and, in fact, Defendant has continued to attempt to conceal such information from similarly situated persons current employees and others.

Again, this language is almost identical to that found in Panaras's complaint:

Defendants, and each of them, actively and intentionally concealed the aforesaid requirements of its Severance Plan, and any revisions thereto, until such time as Plaintiff was terminated. Plaintiff was not notified where he could find copies of Defendants' Severance Plan until months after his termination and, in fact, Defendants, and each of them, have continued to attempt to conceal such information from similarly situated persons, current employees and others.

*Id.* at 792. As with Panaras's other allegations, we concluded that this allegation was unsupported by factual allegations. *See id.*

The only difference between the two allegations is that in their complaint, Jackson and Serment added a citation to the proceedings before the district court regarding their request for an injunction to require Brach to keep its offer of sever-

ance open to them for an indefinite period. The complaint cites Brach as asking the court for "an understanding that whatever is produced is for purposes for this only ... and it's not to be used ... with other employees or to be distributed generally?" In the context of the proceedings, Brach was asking the district court to permit it to minimize the purposes for which the many documents it had been asked to produce, some of which potentially contained proprietary information, could be used. In this context, the district court readily agreed to Brach's request, as did Jackson and Serment. If, as the use of this question in Jackson and Serment's complaint suggests, Brach was trying to conceal information about its severance plan, it seems highly unlikely that the district court or Jackson and Serment would have so willingly agreed to the understanding. Thus, we find that Jackson and Serment's allegations of bad faith, like those of Panaras, are conclusory and unsupported by factual allegations.

Although Jackson and Serment describe six "factual" statements upon which their allegations rest, these also duplicate those presented by Panaras in his complaint. In their brief, Jackson and Serment claim that their allegations are supported by these factual statements: (1) Brach maintained a severance plan governed by ERISA; (2) Brach amended this plan to require that employees wishing to receive severance benefits to execute a general release waiving any and all claims against Brach; (3) Brach employees knew of the severance plan, but were unaware of the modification; (4) Brach actively and intentionally concealed the modifications to the severance plan and failed to provide Jackson and Serment with copies of the plan until after their release from employment and continued to attempt to conceal the modification from other employees; (5) Brach never prepared or provided a summary plan description of the plan or notice or copies of the modification of the plan to Jackson or Serment; and (6) Brach knew or should have known Jackson and Serment would have made other financial arrangements if they had known of the modification and that Brach's concealment was in its own best interests and constituted bad faith. We disagree with their conclusion. These statements do not suggest that Brach acted in bad faith, concealed information about the plan, or prejudiced Jackson and Serment. Statements four and six are conclusory and without the support of factual allegations. The remaining statements, even if taken as true, are simply insufficient to support Jackson and Serment's allegations.

Thus, we agree with the district court's conclusion that Jackson and Serment do not present any factual allegations to support their claims, which mimic those made in *Panaras*. They simply have failed to allege any facts that would show Brach acted in bad faith, concealed its modifications to the severance plan, or prejudiced the pair. Therefore, as in *Panaras*, the grant of Brach's 12(b)(6) motion was appropriate.

### B. Jackson's and Serment's Discrimination Claims

In a separate opinion, the district court granted Brach's motion for summary judgment as to Jackson's and Serment's age and race discrimination claims. We review grants of summary judgment *de novo*. *See Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir.1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion.

Congress enacted Title VII to combat, among other things, racial discrimination by making it unlawful for employers "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). Similarly, Congress enacted the ADEA to fight age discrimination in the workplace by making it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a). The manner in which courts evaluate claims under these two statutes overlaps significantly. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 571 (7th Cir.1998); *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). Thus, we consider Jackson's and Serment's race and age discrimination claims simultaneously.

■ To succeed with a Title VII claim, a plaintiff must demonstrate that the employer terminated his job because of intentional discriminatory reasons. *See Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993). In the same vein, a plaintiff, in order to succeed with an ADEA claim, must establish that the employer would not have terminated his job "but for" the employer's intentional age-based discrimination. *See Fairchild*, 147 F.3d at 571. Under both Title VII and the ADEA, a plaintiff may prove discrimination through either direct or circumstantial evidence or the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). *See Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir.1998).

■ Neither Jackson nor Serment chose to pursue their claims through the direct method; thus, we focus on the *McDonnell Douglas* approach. Under *McDonnell Douglas*, plaintiffs must establish a prima facie case by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. 1817; *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 302 (7th Cir.1996). If they do, a rebuttable presumption is created and defendants must come forth with evidence of a legitimate, nondiscriminatory reason for their actions. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Testerman*, 98 F.3d at 302. Once defendant meets this requirement, the burden shifts back to plaintiffs to demonstrate, once again by a preponderance of the evidence, that the reasons proffered by defendants are actually a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Testerman*, 98 F.3d at 302; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Despite the well-known burden-shifting nature of this approach, the ultimate burden of persuasion as to whether the defendant intentionally discriminated against the plaintiff rests with the plaintiff. *See Fairchild*, 147 F.3d at 572 (quoting *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742).

■ In order to prevail, Jackson and Serment must first establish a prima facie case of discrimination—both as to race and age. "[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion....'" *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)) (emphasis in *O'Connor* removed). In establishing their prima facie cases in the context of a RIF, Jackson and Serment each must show that: (1) he was in a

protected class; (2) he performed his job well enough to meet his employer's legitimate expectations; (3) despite his performance, he was discharged; and (4) in Title VII cases, his employer sought a replacement for him or, in the case of an ADEA claim, the employer treated substantially younger, similarly-situated employees more favorably. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Fairchild*, 147 F.3d at 571; *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir.1998); *Hong*, 993 F.2d at 1261. Brach concedes that Jackson has established a prima facie case of discrimination, but disputes Serment's demonstration. In reaching its conclusion, the district court assumed for purposes of its analysis that Serment had established his prima facie case. We need not resolve Brach's dispute with regard to Serment, however, because, assuming he met this initial requirement, we can decide his case based on the issue of whether Brach's action was a pretext for discrimination. *See Fairchild*, 147 F.3d at 572.

■ Thus, we turn to the next inquiry of the *McDonnell Douglas* framework. Plaintiffs successful in showing a prima facie case establish a presumption of discrimination. *See Fairchild*, 147 F.3d at 572; *Hong*, 993 F.2d at 1261. At this point, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its conduct. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Fairchild*, 147 F.3d at 572; *Hong*, 993 F.2d at 1261. Brach asserts that it terminated Jackson's and Serment's employment as a result of a RIF. Specifically, Brach ended Jackson's employment because of the combination of his seniority level and performance evaluations. With regard to Serment, Brach proffers it released Serment from his employment because his skills were redundant with those of other employees who had broader experience and skills than Serment. Because we find these reasons for discharge legitimate, we move to the next consideration contemplated by the *McDonnell Douglas* framework.

*See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1291 (7th Cir.1997) (finding that employer who proffered it fired employee because of low evaluations articulated a legitimate, nondiscriminatory reason); *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990) (suggesting that employer who replaces adequate employee with another who may be substantially younger, but is superior in other ways is a legitimate, nondiscriminatory reason).

■ If the employer demonstrates a legitimate, nondiscriminatory reason, the plaintiff now must show that the employer's reason is a pretext for discrimination by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *see also Fairchild*, 147 F.3d at 572; *Hong*, 993 F.2d at 1261. Pretext in this context means "a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). We have held that plaintiffs may establish pretext in two ways. "Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993) (citations omitted). Indirect evidence of pretext showing that an employer's proffered reasons are not credible may be made by demonstrating that the reasons are factually baseless, were not the actual motivation for the discharge, or were insufficient to motivate the discharge. *See Wolf*, 77 F.3d at 919; *see also James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir. 1998); *Bahl*, 115 F.3d at 1291. For Jackson and Serment to make a successful demonstration that Brach's reason was a pretext for discrimination, they must also provide evidence of at least an inference that the real reason for their dismissal was discriminatory. *See Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1123 (7th Cir.1998); *see also King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir.1999) ("[T]he plaintiff must proffer significantly

probative admissible evidence showing that the employer's articulated reason for the discharge was a pretext for discrimination."); *see also McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997) ("Once the employer makes this showing [of a legitimate, nondiscriminatory reason], the burden then shifts back to the employee to show that the employer's proffered reasons are pretextual and that its actual reason was discriminatory or retaliatory."). In the context of a motion for summary judgment, however, "if the employer offers a pretext—a phony reason—for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age [or another illegitimate discriminatory reason]." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123 (7th Cir.1994); *see also Hoffman*, 144 F.3d at 1123 (stating that if plaintiff shows that defendant's proffered reason is pretextual, "he 'need not also come forward with further evidence of intentional discrimination to survive summary judgment. [His] proof would at that point be sufficient to support an inference that the company's real reason was discriminatory'" (quoting *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1404 (7th Cir.1996))). Raising an inference of discrimination does not mean a plaintiff has won the case, but rather, only that a plaintiff "has merely produced enough evidence to defeat summary judgment and proceed to trial." *Hoffman*, 144 F.3d at 1123. Thus, if Jackson and Serment establish Brach's proffered reasons are phony, they could survive summary judgment. *Id.*

 We conduct this analysis with a strong recognition that we "do[ ] not sit as a superpersonnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Rather, we must determine "whether the employer gave an honest explanation of its behavior." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987). In other words, if Brach "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless," *see Debs*, 153 F.3d at 396 (quoting *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997) (internal quotation marks omitted)), Jackson and Serment cannot prevail. Thus, to succeed, Jackson and Serment must present evidence supporting at least an inference that, regardless of the reasons stated by Brach, their jobs would not have been terminated "but for" discriminatory reasons. *See Testerman*, 98 F.3d at 304.

## 1. Jackson's Race and Age Discrimination Claims

 Jackson alleges that Brach fired him, not because of his level of performance or seniority, but rather because of his race and age.[2] To refute Brach's assertions, Jackson contends that Brach has presented only his 1993 evaluation as evidence of its assertion that he was discharged because his performance was the lowest in the department. He argues that he disagrees with this evaluation, alleging that the low result was the function of his supervisor's preference for other employees, his personal conflict with another employee, and his supervisor requiring him to work with fewer employees than he actually needed. Because of these preferences, he believes the evaluation reflects his supervisor's bias against him, not a realistic critique of his true job performance. These assertions without factual support are simply not enough to overcome Jackson's burden. Even though it is true, because this case comes before us on a summary judgment motion, that we will construe the facts and draw inferences in the manner most favorable to the nonmov-

---

**2.** With regard to his ADEA claim, specifically, we note that Jackson is fighting an uphill battle because the decisionmakers who terminated his positions were older than he was at the time of termination. Although this evidence is not dispositive, we find it significant in evaluating the evidence of discrimination. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 842 (7th Cir.1996).

ing party, it is equally axiomatic that a plaintiff's conclusory statements do not create an issue of fact. *See Mills*, 83 F.3d at 843. "An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992) (quotation marks omitted). Like the plaintiff in *Mills* who we concluded did not establish a material issue of fact when she merely asserted that she was a model employee to dispute her employer's contrary conclusions, *see id.*, Jackson cannot establish an issue of fact based upon his own assertions that the evaluation upon which Brach based its decision to discharge him was wrong.

■ Jackson also challenges the evaluation as vague and ambiguous. We find nothing ambiguous about the term "Needs Improvement" as a rating of an employee's performance. While it may not specify the exact nature of the problem, it is sufficient to demonstrate that the employee was not meeting the expectations of his employer and to create a valid reason to discharge an individual. Jackson was the only employee in his department to receive this evaluation. Thus, regardless of Jackson's questions as to its accuracy, the fact remains that Brach honestly believed Jackson's performance was less than that of his co-workers when it discharged him. An employer's honest belief, whether or not it is mistakenly held, is the issue relevant to these situations. *See Bahl*, 115 F.3d at 1291–92. Jackson presents no evidence to show Brach's reasons were a pretext for discriminating against him based on his race or age. Therefore, we find no reason to disturb the district court's decision to grant Brach summary judgment as to Jackson's race and age discrimination claims.

**2. Serment's Race and Age Discrimination Claims**

■ Serment contends that Brach discharged him because of his race and age, not as the company asserts because the manager of the Central Services Cell concluded that Serment's skills were redundant and that another employee who also possessed additional skills could perform Serment's duties. Serment raises four problems with Brach's contentions. First, he claims Brach's argument is suspect because it relies solely upon the belief of the manager of the Central Services Cell. Serment, however, provides no other reason for us to disregard the decision-maker's belief. Because the employer's belief at the time is the important factor we consider, *see Debs*, 153 F.3d at 396, we find no reason to discount the manager's statements.

■ Second, Serment claims that we should doubt Brach's reasons because the company failed to provide side-by-side comparisons between the retained employees' skills and Serment's. However, Brach did compare the skills of its employees when deciding which ones it would discharge. It retained those employees whose skills would enable them to assume the responsibilities of those employees who were discharged. Employers may make such subjective assessments of their employees without violating anti-discrimination laws. *See Testerman*, 98 F.3d at 304. In addition, Serment presents no evidence demonstrating that he possessed the relevant skill or was fired for a reason other than one relating to the range of his skills. Thus, we find no reason to conclude that Brach did not make such a comparison or that we should disturb its results.

More interesting, however, is Serment's list of four facts he believes makes Brach's proffered reasons suspect. Serment states that all of the employees in the Central Services Cell who were discharged were in the age group protect by the ADEA and that at least one of the retained employees was substantially younger than Serment. In addition, he states that all of the retained employees or those who assumed additional duties because of the discharge were white or non–Hispanic. Finally, Serment notes that he was the only Hispanic manager within the division and was ter-

minated. He believes these facts, taken together, constitute evidence of age and race discrimination. These facts, however, do not paint the full picture of the RIF in his division. We assume that, by emphasizing the fact that all of the discharged employees in the RIF were more than forty years old, Serment would have us infer an illegitimate discriminatory reason for their dismissal. We cannot reach this conclusion. Of the seven employees whose jobs Brach terminated in this division, six were white. The company did not discharge the African-American employees in this division. The employee who replaced Serment was older than him. Brach did not discharge all of its employees who are minorities or were the same age or older than Serment. It is also important to note that Brach terminated *all* the salaried employees in Serment's group, including Serment. Serment also offers no evidence that Brach's evaluation of his skills was incorrect or that they were the same or similar to those of the employee who replaced him. Thus, while it is indisputable that Brach did discharge employees who were in protected classes under both Title VII and the ADEA, Serment's recitation of these facts fails to create a genuine issue of material fact as to this issue and, more importantly, fails to establish that Brach's proffered reasons for its decisions were a pretext for discrimination. Thus, we find no reason to alter the district court's conclusion in this regard.

### III. Conclusion

Jackson and Serment's claims under ERISA, as well as those under Title VII and the ADEA fail. Jackson and Serment do not state a valid claim under ERISA in light of our decision in *Panaras*, and, thus, the district court correctly granted Brach's Rule 12(b)(6) motion for failure to state a claim. In addition, their allegations of racial and age discrimination do not create issues of material fact that would challenge Brach's proffered legitimate, nondiscriminatory reason for their discharge. Because no issues of fact exist with regard to their charges of pretext, the district court correctly granted Brach's motion for summary judgment on these claims. We, therefore, AFFIRM the district court's decisions.