Susan MCKENZIE, Plaintiff–Appellant,

v.

**ILLINOIS DEPARTMENT OF TRANSPORTATION, Defendant–Appellee.**

Nos. 00–3799, 01–1097.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 2002.

Decided March 22, 2002.

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

In this employment discrimination case, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Susan McKenzie sued her employer, the Illinois Department of Transportation (IDOT), claiming that she was discriminated against on the basis of sex and that she was retaliated against because she had filed a previous Title VII claim. The district court granted summary judgment, finding that McKenzie failed to present sufficient evidence to establish that she had suffered a materially adverse employment action or that the IDOT's reasons for its actions were pretextual. During the time the motion was pending in the district court, the IDOT moved successfully to have certain of McKenzie's affidavits stricken from the record. Although McKenzie had not responded to the original request to strike the affidavits, she filed a motion asking the court to reconsider the order. Her motion to reconsider was denied. The court also ordered her to pay most of the IDOT's costs incurred during the litigation. In this appeal, she raises issues involving each of these decisions.

In her previous charge filed with the Equal Employment Opportunity Commission in 1990, McKenzie alleged that she was discriminated against because of her sex. Based on that charge, she filed a case in district court in 1993. In 1995 summary judgment was entered against her, and we affirmed that judgment on appeal. *See McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473 (7th Cir.1996). In 1996 McKenzie filed the present charge with the EEOC, this time alleging retaliation as well as sex discrimination.

McKenzie has worked for the IDOT for 21 years. Currently she is in the day labor section, which is responsible for highway maintenance. She works as an auto parts warehouser and is the only person doing her particular job. In her claim she sets out a number of incidents which she says were discriminatory.

The first incident involves the operation of a forklift. McKenzie's job description included the ability to drive a forklift, although she was not aware of this duty until February 1996. Prior to her gaining that knowledge, in November 1995, she was told that she would have to learn to

drive a forklift. She was the only female in the forklift-driving class and the only person who had not previously used a forklift. Because of her inexperience, she was given individual training in addition to the training received by others. At her first training session she realized that her weak left leg could not independently activate the brake. She used her right leg as well but in the process twisted her back. Then, in an unrelated matter, a few days later she had a cold at the same time that some painting was being done a half block from her work area. She had trouble breathing.

McKenzie went to her doctor complaining of bronchial asthma and also, for the first time, asked about her back problem. After the visit to the doctor, she was scheduled for forklift training, but she presented an excuse from her doctor that said, "Patient unable to use forklift—only light duty for 2 wks." She was sent home with instructions not to return until she saw an assigned doctor. She did not work from January 24 until she obtained a return-to-work slip on February 13. While she was on leave she used paid vacation and sick time.

She claims that during this period she should have been given light duty rather than being off work altogether. The IDOT says she was the only person doing her job so light duty was not an option.

On March 1 she was back training on the forklift when the seat slipped out of place and she re-injured her back. She called the office of her supervisor, Jim Ketchum, and said she had to go home. She got medical treatment March 7; the doctor gave her a note saying, "No forklift driving one month due to recurring back strain." She obtained another note on March 19.

On April 3 she received a return-to-work slip, but Ketchum did not allow her to return. McKenzie said her lawyer had told her to return. Ketchum said McKenzie's lawyer and doctor did not run the department. Ultimately, she did go to work that day, and she completed her forklift training at the end of April.

These incidents led to her complaint about the handling of her worker's compensation claim, which she filed because of her back injury. Her claim was denied twice. She says that she was discriminated against in the processing of the claim by being sent for a fitness-for-duty evaluation and not being allowed to perform light duty during this time. Ultimately, her worker's compensation claim was settled and she was granted compensation for the time she missed work.

But during the pendency of her worker's compensation claim, she used up vacation and sick pay. Once she received worker's compensation, even though the settlement of the worker's compensation claim did not mention anything about repayment of the vacation and sick pay, she was asked to repay the amounts she had collected. On August 30, 1996, the IDOT sent her a memo requiring her to reimburse it for duplicate payments she had received by collecting worker's compensation plus vacation and sick pay. Her attorney replied by questioning the source of the requirement for repayment. The IDOT replied, citing as authority for its request the union contract and IDOT personnel manual. After much wrangling, pursuant to 15 ILCS 405/10.05 (1998), the Illinois Comptroller's Office garnished her wages. McKenzie complained to the union, which filed a grievance. An arbitrator found that she was required to reimburse the state for both vacation and sick time, but the IDOT was ordered to reimburse her for 3 days which had been overpaid. In turn, the vacation and sick days were restored to her benefit account.

McKenzie also complains about restrictions on her use of a computer. From May 1995 until 1999 she was allowed to use a computer only between noon and 1:30. She does not know of anyone else whose access was limited.

In addition, she complains about changes in her job duties. Another employee was given some of the work McKenzie had been doing. However, McKenzie's job classification was not changed; her salary has not been lowered. The change in job duties was grieved and resolved. She claims, however, to be in danger of future adverse job actions.

Finally, she complains about the attitude of her supervisor, Ketchum. For instance, in March 1997 he told her that he had the political power to get rid of her. He also did not help her open a garage door when he said he would. He yelled at her, and his tone of voice upset her. All of these things McKenzie blames on sex discrimination or retaliation.

To prevail on a Title VII disparate treatment claim, a plaintiff must show that she is the victim of intentional discrimination. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir.1999). At the summary judgment stage, she can establish discrimination through a "direct" or an "indirect" method. *Jackson.* Under either method, a plaintiff must show that she suffered an adverse employment action. *Wallace v. SMC Pneumatics., Inc.*, 103 F.3d 1394 (7th Cir. 1997); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Similarly, in order to establish a prima facie case of retaliation, a plaintiff must show that she suffered an adverse employment action. For a retaliation claim, a plaintiff must show that she engaged in statutorily protected expression, that she suffered an adverse employment action, and that there was a causal link between the protected expression and the adverse action. For a causal link to exist, the expression and the job action must occur fairly close in time. *Oest v. Illinois Dept. of Corrections,* 240 F.3d 605 (7th Cir.2001).

■ There are *at least* two problems with McKenzie's case. First, as to the retaliation claim, the length of time between the protected expression and the alleged job action is significant. She filed her first charge in 1990, and her complaints in this case begin in 1995. It is true that the prior case was not completed (in that we did not issue our decision) until 1996, but the charge was filed much earlier. Timing is the sole causal link she relies on, and it does not carry the day. *See Oest.*

■ Her second problem, which, as we have just said, is relevant to both claims, is in establishing an adverse employment action. McKenzie claims that the adverse employment action exists because her supervisor restricted her use of the computer requiring her to work overtime without pay, added additional duties to her job description without giving her adequate training, refused to pay her worker's compensation benefits, refused to let her work light duty, sent her for a fitness for duty evaluation, required her to buy back vacation and sick time, garnished her wages without a court order, refused to pay certain benefits while she was off work, and diminished her job responsibilities.

It seems that a number of incidents made McKenzie unhappy. But unhappiness does not an adverse employment action make. Looking at her complaints, we see that she received credit for the vacation and sick time. As to the garnishment itself, 15 ILCS 405/10.05 requires that, for amounts owed to the state, the only requirement is that the employee be notified prior to the garnishment. There is no

claim that McKenzie was not notified. Furthermore, she has now been trained and can operate the forklift. She does even not claim that her salary was affected, and she has not lost her job. Her claim that she might lose her job in the future is speculative. The incidents about which she complaints are simply not materially adverse changes in her employment. As we have said:

A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat'l Bank & Trust,* 993 F.2d 132, 136 (7th Cir.1993).

■ McKenzie also says her ability to respond to the summary judgment motion was hampered by the order striking her affidavits. However, we cannot find that the district judge abused his discretion in striking the affidavits or in denying her request to reconsider the order. *Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119 (7th Cir.2001). When the IDOT filed its motion to strike the affidavits, McKenzie did not respond to the motion, and the affidavits were stricken. Twice McKenzie tried to have the decision reconsidered, and twice her request was denied. She says she did not respond in the first instance because the motion was in violation of Local Rule 7(D)(4) of the Central District of Illinois, which provides that "[t]here shall be no other filings [in addition to ones specifically allowed] in support of or in opposition to the motion for summary judgment without leave of the court." The rule, however, as the court explained, prevents surreply briefs on motions for summary judgment; it does not prohibit a motion to strike, which can be filed at any time. McKenzie should have responded to the motion to strike, and she did not. At the very least, she should have filed an objection to the motion if she thought it was in violation of the rules. We can find no abuse of discretion in striking the materials.

■ McKenzie also says that certain costs, including deposition costs, should not have been incurred by the IDOT in the first place because, rather than filing for summary judgment, the agency should have filed a motion to dismiss the action 2 years earlier. The argument is nothing if not surprising. Surely she cannot seriously be complaining that if the IDOT had filed a motion to dismiss her case, the motion should necessarily have been granted and these costs would not have been incurred. One might note that she, herself, could also have prevented the incurring of costs by voluntarily dismissing her case. We conclude that the costs incurred were not excessive and that there was no abuse of discretion by the district court in awarding them to the IDOT.

The judgment of the district court is AFFIRMED.