George MICHAEL, Independent Executor of the Estate of Phillip Khan, deceased and Susan Michael, Plaintiff–Appellant,

v.

FIRST COMMERCIAL BANK, an Illinois Banking Association and First Commercial Bank Group Benefit Plan, Defendants–Appellees.

No. 02–2065.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 2003.

Decided July 7, 2003.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

## ORDER

Plaintiffs George and Susan Michael (collectively "the Michaels") were denied life insurance benefits when Phillip Khan, Susan Michael's father, died before he received notice concerning his right to convert his group life insurance policy into an individual policy. The Michaels sued the plan and the plan administrator, First Commercial Bank ("First Commercial" or "the bank"), under ERISA for breach of fiduciary duty by failing to comply with the plan's requirements for giving timely notice and by failing to provide the decedent with copies of the plan documents upon request. The district court dismissed the action for failure to state a claim; it held that there was no violation of the terms of the plan. The Michaels appeal this decision. For the reasons set forth in this order, we affirm the judgment of the district court.

### 1.

Phillip Khan, now deceased, was an employee of First Commercial and participated in a group life insurance plan governed by ERISA and administered by First Commercial. Under the plan, Khan's beneficiaries were to receive $69,200 upon his death. Khan named his wife, Melanie Khan, and his daughter, Susan Michael, as the primary beneficiaries.[1]

On August 31, 2000, because of his failing health due to leukemia, Khan voluntarily terminated his employment pursuant to a termination agreement. The Michaels alleged in their complaint that, at the time of negotiating the agreement, Khan's attorneys specifically requested of First Commercial any information concerning life insurance benefits that Khan had as a result of his employment with First Commercial and a copy of any employee welfare plan or benefit that he had. In response, First Commercial told the attorneys that there were no insurance benefits then existing. Additionally, the termination agreement, although providing for continuation of other employment benefits, was silent as to whether there were any life insurance benefits owed to Khan at the time of the termination of his employment. First Commercial failed to supply a copy of the plan as requested. *See* R.15 at 4, ¶ 12. Khan died on October 24, 2000. Before his death, Khan did not convert his group life insurance policy into an individual policy and, consequently, the beneficiaries were unable to recover under the policy.

The complaint alleged that Khan never received notice concerning his right to convert his coverage from a group policy to an individual policy. Further, the complaint alleged that, if Khan had received notice concerning his conversion rights before his death, he would have converted the policy and would have designated Susan Michael as the sole beneficiary.

The Michaels alleged in the complaint that a notice of conversion rights was first received by George Michael on November 8, 2000, after Khan's death. George Michael found the notice "in his mailbox apart from his normal mail." R.15 at 7, ¶ 20. The notice was dated September 29, 2000. The Michaels attached the notice to their complaint. The defendants have asserted that the notice was mailed on September 29, 2000. On the back of the envelope in which George Michael found the Notice of Conversion was a postage meter stamp with the date September 29, 2000.

---

1. The Michaels claim that, by the end of his life, Khan and his wife were having marital difficulties and that Khan attempted to completely disinherit her. This contention is of no relevance to the resolution of this action.

Under the Group policy, certain events will terminate an employee's (and his beneficiaries') eligibility for benefits under the plan. One of those events is "[t]ermination of employment." R.15, Ex.B. Thus Khan's eligibility was terminated on August 31, 2000, when he voluntarily terminated his employment. Although the group benefits are terminated, the group policy explains that "Group Life Insurance may be converted to a plan of individual permanent life insurance." R.15, Ex.A at 2. In order to convert the group rights to individual rights, the policy holder (Khan) was required to complete a specific form entitled "Notice of Conversion Privilege" and return that form within a specific time period. R.15, Exs. A & B. The plan policy provides:

> Conversion rights will expire unless the completed form is mailed to THE HARTFORD within:
>
> a. 31 days from the Date of Group Coverage Termination, or
>
> b. 15 days from the date the NOTICE OF CONVERSION PRIVILEGE is given to you, whichever is later.
>
> In no event, will item b. extend your right to apply for conversion beyond 91 days after the Date of Group Coverage Termination.

R.15, Ex.A at 2. Thus, in order to convert his rights, Khan was required to fill out the form and send it to Hartford either 31 days from the date of termination (which would be October 1, 2000) or 15 days from the date the Notice of Conversion was given him, not extending beyond 91 days. Fifteen days prior to the 91st day is November 15, 2000. Thus, as long as Khan received the notice by November 15, 2000,

he would still have 15 days from receipt of the notice in which to convert his policy.

The policy also states:

> Many states have laws requiring the group policyholder to notify covered individuals of any conversion rights when coverage is terminating. Failure to do so could impact the individual's right to conversion and expose you to legal action. Most group plans allow conversion of life insurance and medical benefits when eligibility under the group is lost. The converted benefits are NOT the same as those under the group.
>
> . . .
>
> TO GIVE PROPER NOTICE OF CONVERSION RIGHTS
>
> 1. Complete Part A, answering all questions; making certain to include date and signature. Do this no later than 10 days from the termination of coverage.
>
> 2. Give pages 1 & 2 to the terminating individual, or mail to his/her last known address.
>
> 3. Retain page 3 for your records.
>
> 4. If you have any questions on how to complete this form, you may call the Conversion Unit. . . .

R.15, Ex.B. The bank did not complete the form within 10 days from Khan's August 31, 2000, termination; in fact, it did not complete it until September 29, 2000.[2]

The Michaels alleged that, by wrongfully informing Khan's attorney that there was no life insurance and by failing to send out the notice within 10 days as allegedly required by the plan, the bank breached its fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1)(B) & (D).[3] The Michaels also

---

**2.** In its reply brief for the motion to dismiss to the district court, the bank attached an affidavit from Gary Bunce, the employee who filled out the form, and he attested that he "completed Part A on the Notice of Conversion form and signed and dated the form on September 29, 2000." R.28, Ex.1 at 2.

**3.** In their complaint, the Michaels allege that the bank breached its fiduciary duty under

alleged that by failing to supply a copy of the plan when Khan's attorney requested it, the bank violated the provisions of ERISA, specifically, 29 U.S.C. § 1024(b)(4).

First Commercial moved for, and the district court granted, dismissal of the action under Federal Rule of Civil Procedure 12(b)(6) on the basis that the Michaels had failed to state a claim upon which relief could be granted.[4] The district court noted that the Michaels argued that, under the provisions of the plan document quoted above, the bank was required to *send* the notice within 10 days of termination, which it had failed to do. On the other hand, the bank argued that the 10–day provision only required that it complete the form within 10 days and that the other provision only required it to send the notice within 15 days of the 91st day from the termination. The district court agreed with the bank's interpretation "that notice was proper as long as the Notice was sent on or before 15 days prior to the 91st day after Mr. Kahn's [sic] coverage terminated, which is November 15, 2000. . . . [P]lain-

tiffs have testified that they received the Notice on November 8, which is still prior to November 15." R.29. The court noted that, although "plaintiffs assert that First Commercial knew of Mr. Kahn's [sic] illness and should have sent the Notice earlier," the court could "find no provision under ERISA that requires an employer to accelerate the processing of such documents if there is knowledge that the former employee is ill." *Id.*

### 2.

#### a.

We review de novo the district court's decision to grant a motion to dismiss. "Rule 12(b)(6) motions should be granted only if the plaintiff cannot present any set of facts that would entitle her to relief." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir.1999). "We must accept the well-pleaded allegations in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 977–

§ 1104(a)(1)(B) and § 1104(a)(1)(C). *See* R.15 at 7. However, it is apparent that the Michael's intended to cite subsection (D) rather than subsection (C). Subsection (D) requires that the fiduciary act "in accordance with the documents and instruments governing the plan," which is the basis for the Michael's claim and which was cited by the Michaels in their filings to this court. 29 U.S.C. § 1104(a)(1)(D). While the Michaels miscited the applicable subsection in their complaint, the parties and the district court proceeded as if the correct subsection had been cited, and so we will construe their citation of subsection (D) to this court as a constructive amendment of their complaint.

**4.** The parties attached documents to support or, alternatively, discredit certain factual contentions made in their various filings surrounding the 12(b)(6) motion. On appeal, both parties continue to argue these factual matters that were supported by the supplemental documents attached to their 12(b)(6)

filings, but these matters are irrelevant. For, while "[a] motion under Rule 12(b)(6) becomes a motion for summary judgment when the defendant attaches materials outside the complaint, as the [parties here] did," this is only true where "the court 'actually considers' some or all of those materials." *Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir.2002) (internal quotation marks and citations omitted).

The district court did not consider or rely on any of these supplemental documents or facts in its ruling. Rather, the district court only considered the complaint and the documents attached to the complaint (the provisions of the plan) in ruling on the 12(b)(6) motion. The district court specifically did not resolve the factual dispute as to whether the notice was sent on September 29, 2000, or whether it was sent/delivered substantially later such that it arrived on November 8, 2000. We also consider it unnecessary to consider these supplemental documents and facts.

78 (internal quotation marks and citations omitted).

The Michaels' primary contention is that the bank violated its fiduciary duty under ERISA by not sending the notice within 10 days. In their view, the plan requires that such notification be sent within that time period. Indeed, ERISA does require that a fiduciary discharge its duties "solely in the interest of the participants and beneficiaries," and to do so "in accordance with the documents and instruments governing the plan" 29 U.S.C. § 1104(a)(1)(D).

In interpreting the language of a plan under ERISA, "we must apply federal common law rules of contract interpretation. Those rules direct us to interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001) (internal quotation marks and citations omitted). "In attempting to interpret such plans, our first task is to determine if the contract at issue is ambiguous or unambiguous. Contract language is ambiguous if it is susceptible to more than one reasonable interpretation." *Id.* (internal quotation marks and citations omitted). "If the plan document is unambiguous, it can be construed as a matter of law." *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 288–89 (3d Cir.1995); *see also Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir.1996). On the other hand, "[a]mbiguous terms in an insurance contract will be strictly construed in favor of the insured. However, we will not artificially create ambiguity where none exists." *Hammond v. Fid. & Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992) (internal quotation marks and citations omitted).

■ The two relevant provisions from the plan follow:

Conversion rights will expire unless the completed form is mailed to THE HARTFORD within:

a. 31 days from the Date of Group Coverage Termination, or

b. 15 days from the date the NOTICE OF CONVERSION PRIVILEGE is given to you, whichever is later.

In no event, will item b. extend your right to apply for conversion beyond 91 days after the Date of Group Coverage Termination.

R. 15, Ex.A at 2.

■ TO GIVE PROPER NOTICE OF CONVERSION RIGHTS

1. Complete Part A, answering all questions; making certain to include date and signature. Do this no later than 10 days from the termination of coverage.

2. Give pages 1 & 2 to the terminating individual, or mail to his/her last known address.

R. 15, Ex.B. While neither provision explicitly states that the bank was required to send the form within a certain time period, the "TO GIVE PROPER NOTICE" provision does not require the bank to actually send the form within 10 days. Its express terms only require that the form be "[c]omplete[d]" within ten days of the termination. The Michaels would have us move the 10–day requirement from subsection 1 into subsection 2, instructing the administrator to *give* the notice to the terminating individual within the 10–day period. While the plan unambiguously requires the administrator to "[c]omplete" the form within 10 days, the plan also unambiguously contains *no* requirement that the administrator mail or give the form to the participant within 10 days of termination. The bank therefore did not breach its fiduciary duty under

§ 1104(a)(1) by failing to send the form to Khan within 10 days.[5]

-- This construction of the 10–day provision is bolstered by the fact that a participant's rights are not affected by a failure to send the notice within 10 days. The provision concerning the expiration of conversion rights, again unambiguously, states that a participant still can convert his rights up until 15 days after he receives notice, as long as it is before the 91st day. Thus, a participant could not be harmed by a failure to send the notice unless the administrator failed to give the notice to the participant within 76 days. If an administrator gives the notice to the participant within 76 days, the participant will have 15 days from his receipt of the form in which to convert his rights. As noted by the bank, the allowance for up to 91 days before expiration of rights and the 15 day extension from receipt of notice would be largely superfluous if the plan required notice to be given within 10 days. The Michaels received the form on November 8, 2000, which was 69 days from Khan's termination. Under the terms of the plan, Khan's conversion rights had not been extinguished and, had he been alive, he would have had 15 days from November 8, 2000, to convert his rights.

**b.**

▇ The Michaels also alleged in their complaint that the bank violated ERISA by not providing Khan with a copy of the plan when his attorney requested it during negotiations for Khan's termination agreement. Under 29 U.S.C. § 1024(b)(4), the administrator must provide the insured with plan documents "upon written request of any participant or beneficiary." *Id.* The complaint only alleges that Khan's attorney made an oral request for such documents, and the Michaels have not alleged that at any subsequent point a written request was made. Thus, the bank did not violate § 1024(b)(4).

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

---

5. While the bank did not follow the plan's requirement that it *complete* the form within ten days, this failure does not harm the Michaels because the bank sent the notice within the required 76 days; consequently, had Khan not died, Khan still would have been able to convert his policy. We have stated that, to show a breach of a fiduciary duty under ERISA, "the plaintiff must allege that the breach of fiduciary duty caused some harm to him or her that can be remedied." *Kamler v. H/N Telecomm. Servs. Inc.*, 305 F.3d 672, 681 (7th Cir.2002). Here it was not the bank's failure to fill out the form that caused Khan to lose his conversion rights (because had he been alive, he still had the full 15 days to convert); rather, it was his death that prevented him from converting the policy.